### IN THE UNITED STATES DISTRICT COURT
### FOR THE NORTHERN DISTRICT OF GEORGIA
### ATLANTA DIVISION

UMAR CLARK,

                Plaintiff,

    v.

DISCOVER BANK,

                Defendant.

CIVIL ACTION FILE NO.
1:25-cv-00920-AT-RGV

### MAGISTRATE JUDGE'S FINAL REPORT,
### RECOMMENDATION, AND ORDER

Defendant Discover Bank ("Discover")[1] has filed a motion to compel arbitration and to stay the action pending arbitration, [Doc. 4], which plaintiff Umar Clark ("Clark"), proceeding *pro se*, opposes, [Docs. 8, 9, & 10],[2] and Discover has filed a reply in support of its motion, [Doc. 13]. Discover also has filed a

---

[1] Discover asserts that pursuant to a "merger agreement[] on May 18, 2025, [ it] merged into Capital One, N.A. with Capital One, N.A. as the surviving entity," and therefore, "Capital One, N.A. is the successor by merger to Discover []." [Doc. 15 at 1 n.1]. The listed document and page numbers in citations to the record in this Final Report, Recommendation, and Order refer to the document and page numbers shown on the Adobe file reader linked to the Court's electronic filing database, CM/ECF.

[2] The responses filed by Clark as Documents 8 and 9 are identical, and Document 10 is nearly identical to those two documents. Compare [Docs. 8 & 9], with [Doc. 10]. For the purposes of the pending motions, the Court will cite to and refer to Document 8 as Clark's properly filed response in opposition.

motion to stay pending resolution of the motion to compel arbitration, [Doc. 11], which Clark opposes, [Doc. 12], and Discover has filed a reply, [Doc. 14], as well as an unopposed motion to extend discovery until its motion to compel arbitration is resolved, [Doc. 15].  For the reasons that follow, Discover's motion to stay, [Doc. 11], and unopposed motion to extend discovery, [Doc. 15], are **GRANTED**,[3] and it is **RECOMMENDED** that Discover's motion to compel arbitration and stay the case, [Doc. 4], be **GRANTED IN PART** and **DENIED IN PART**, finding Clark's claims in this case are arbitrable pursuant to a valid arbitration agreement, but that this case should not be stayed pending the outcome in arbitration and should instead be **DISMISSED**.

---

[3] Discover has filed a motion to stay, [Doc. 11], in which it seeks a stay of discovery and the pretrial deadlines until after the Court rules on its pending motion to compel arbitration, see [id.].  Clark opposes the motion, [Doc. 12], and Discover has filed a reply in support of its motion, [Doc. 14].  Upon consideration of the motion, and in the interest of justice and judicial economy, the Court hereby **GRANTS** Discover's motion to stay, [Doc. 11], and **STAYS** the parties' obligations to comply with the deadlines for conducting a Rule 26(f) conference, serving initial disclosures, and filing a joint preliminary report and discovery plan until the District Judge reviews this Final Report, Recommendation, and Order on the pending motion to compel arbitration.  Discover also requests an extension of the discovery deadline until its motion to compel arbitration is resolved, [Doc. 15], and it has indicated that it conferred with Clark, who consents to the motion, [id. at 3].  Upon consideration of the motion, and in the interest of justice and judicial economy, the Court hereby **GRANTS** the motion, [Doc. 15], and extends the discovery deadline, including any deadlines for serving initial disclosures and for filing the joint preliminary report, for a period of four months from the date the District Judge rules on this Final Report, Recommendation, and Order, should the motion to compel arbitration be denied.

## I.  FACTUAL AND PROCEDURAL BACKGROUND

This case concerns claims related to a Discover credit card issued to Clark. See [Doc. 1].[4]  In particular, on June 19, 2020, Clark opened a credit card account with Discover.  [Doc. 4-2 ¶ 8].  At the same time Discover mailed Clark the credit card, it also included a copy of the applicable Cardmember Agreement, which was mailed "to the address provided on Clark's credit application, postage prepaid," and Discover's records indicate that neither the Cardmember Agreement, nor the credit card were returned as undeliverable.  [Id. ¶¶ 9-10].  The Cardmember Agreement includes a section entitled "Arbitration," which provides in relevant part:

> **Agreement to Arbitrate.**  In the event of a dispute between you and us arising out of or relating to this Account or the relationships resulting from this Account or any other dispute between you or us,

---

[4] The factual background is taken from the pleadings and exhibits and does not constitute findings of fact by the Court.  Additionally, Discover has submitted an affidavit from John Wantuch, Vice President of Credit Management at Discover Products Inc., a servicing subsidiary of Discover, as well as certain exhibits.  See [Doc. 4-2 (Wantuch Decl. & Exs. 1-2); Doc. 4-3].  The Court may "consider evidence outside of the pleadings for purposes of a motion to compel arbitration." Chambers v. Groome Transp. of Ala., 41 F. Supp. 3d 1327, 1334 (M.D. Ala. 2014); see also In re Checking Account Overdraft Litig., 754 F.3d 1290, 1294 (11th Cir. 2014) (describing the standard used to resolve motions to compel arbitration as "summary-judgment-like").  Accordingly, the Court will consider the declaration and exhibits submitted by Discover in ruling on the pending motion to compel arbitration.  See Hanson v. Experian Info. Sols., Inc., CIVIL ACTION NO. 1:23-CV-4564-MHC-CMS, 2024 WL 2974160, at *5 n.3 (N.D. Ga. June 12, 2024) (considering declaration and exhibits proffered by party seeking to compel arbitration), adopted by 2024 WL 3509482, at *11 (N.D. Ga. July 22, 2024).

including, for example, a dispute based on a federal or state statute or local ordinance ("Claim"), either you or we may choose to resolve the Claim by binding arbitration, as described below, instead of in court. Any Claim (except for a Claim challenging the validity or enforceability of this arbitration agreement, including the Class Action Waiver) may be resolved by binding arbitration if either side requests it.  THIS MEANS IF EITHER YOU OR WE CHOOSE ARBITRATION, NEITHER PARTY WILL HAVE THE RIGHT TO LITIGATE SUCH CLAIM IN COURT OR TO HAVE A JURY TRIAL. ALSO DISCOVERY AND APPEAL RIGHTS ARE LIMITED IN ARBITRATION.  Even if all parties have opted to litigate a Claim in court, you or we may elect arbitration with respect to any Claim made by a new party or any new Claims later asserted in that lawsuit.

. . . .

**Governing Law and Rules.**  This arbitration agreement is governed by the Federal Arbitration Act ("FAA").  Arbitration must proceed only with the American Arbitration Association ("AAA").  The rules for the arbitration will be those in this arbitration agreement and the procedures of the AAA, but the rules in this arbitration agreement will be followed if there is disagreement between the agreement and the AAA's procedures.  If the AAA's procedures change after the Claim is filed, the procedures in effect when the Claim was filed will apply.[5]

. . . .

**Survival of this Agreement.**    This arbitration agreement shall survive:

- closing of your Account;

---

[5] The Cardmember Agreement specifically provides that it is "governed by applicable federal law and by Delaware law."  [Doc. 4-2 at 9].  In addition, AAA procedures provide that the "arbitrator shall have the power to rule on their own jurisdiction, including any objections with respect to the existence, scope, or validity of the arbitration agreement or the arbitrability of any claim or counterclaim," and that the "arbitrator shall have the power  to determine the existence or validity of a contract of which an arbitration clause forms a part."  <u>See</u> American Arbitration Association, <u>Consumer Arbitration Rules and Mediation Procedures</u> ("AAA Rules") R-7, https://www.adr.org/rules-forms-and-fees/consumer/, (last visited Sept. 22, 2025).

- voluntary payment of your Account or any part of it;
- any legal proceedings to collect money you owe;
- any bankruptcy by you; and
- any sale by us of your Account.
  **You Have the Right to Reject Arbitration for this Account. You may reject this arbitration agreement but only if we receive from you a written notice of rejection within 30 days of your receipt of the Card after your Account is opened**. . . . If you reject arbitration, neither you nor we will be subject to the arbitration agreement for this Account. . . .

[Id. at 9-10 (footnote added) (emphasis and all caps omitted)].[6]

After Discover mailed to Clark the credit card and Cardmember Agreement, Clark "activated and used the Discover credit card to make purchases and incurred a balance on the Account," and these "charges were reflected in account

---

[6] The Cardmember Agreement also provides that "[y]ou accept this Agreement if you do not cancel your Account within 30 days after receiving a Card. You also accept this Agreement if you or an Authorized User use the Account. You may, however, reject the 'Arbitration of Disputes' section as explained in that section." [Doc. 4-2 at 7]. Moreover, it includes a section entitled, "Credit Reporting Agency Information," which provides:

> You authorize us to get information from credit reporting agencies and other sources for servicing or review of your Account, collection and any other use permitted by law, including to consider you for other products and services. We may report the status and payment history of your Account to credit reporting agencies and other creditors. We normally report to credit reporting agencies each month. If you believe that information we reported is inaccurate or incomplete, please write us at Discover, P.O. Box 30939, Salt Lake City, UT 84130-0939. Please include your name, address, home phone number and Account number.

[Id. at 8 (emphasis omitted)].

statements, which Discover provided to Clark every month." [Id. ¶ 13]; see also [id. at 12-107]. Clark also "made payments in response to the account statements," and he "never canceled the Account" and Discover still retains all rights to the Account at issue. [Id. ¶¶ 13, 15-16]; see also [id. at 12-107].

On February 21, 2025, Clark filed this action against Discover, alleging a violation of the Fair Credit Reporting Act, 15 U.S.C. § 1681 ("FCRA"), as well as a state law claim of negligence. [Doc. 1]. Clark's claims are based upon his allegations that in October 2004, he attempted to apply for a business loan but was denied "due to a delinquent account reported on his consumer credit reports"; that upon reviewing his Experian credit report, he "noticed inconsistencies in the payment history of a charged-off account with Discover" and "immediately disputed the account with Experian, but the dispute was returned as 'verified' by Discover"; that in February 2025, he contacted Discover and spoke with an employee, "who provided conflicting information regarding the account," including the date of first delinquency, the date of the last payment, and the date the account was charged off, which indicated that Discover "re-aged the account"; and that as a result of Discover's inaccurate reporting, he was denied a business loan and his car loan interest rate increased. [Id. ¶¶ 6-16, 22-23 (citations omitted)]. Clark alleges that Discover violated the FCRA "by willfully and negligently reporting inaccurate information about [his] credit account," and that it also

6

"failed to conduct a reasonable investigation of [his] dispute[.]" [Id. ¶¶ 24, 42-43]. He also alleges that Discover owed him a duty of care to "accurately report credit information and to investigate disputes in a reasonable manner," but that Discover "breached this duty by reporting inaccurate information and failing to properly investigate [his] dispute." [Id. ¶¶ 46-47].

Discover moves to compel arbitration and stay proceedings, [Doc. 4], which Clark opposes, [Doc. 8]. Discover has filed a reply in support of its motion, [Doc. 13], and the pending motion to compel arbitration and stay proceedings, [Doc. 4], having been fully briefed, is now ripe for ruling.

## II.    DISCUSSION

Discover argues that Clark entered into a valid and binding agreement to arbitrate all disputes arising out of his Discover credit card account pursuant to the terms of the Cardmember Agreement, including the claims brought in this lawsuit, and that the Court should compel arbitration pursuant to this agreement. See [Docs. 4 & 13]. In response, [Doc. 8], Clark maintains that Discover "waived its right to arbitrate by delaying its motion," that the arbitration agreement is "unenforceable due to unconscionability," that his FCRA claim falls outside the scope of the agreement, and that "compelling arbitration undermines the FCRA's public policy objectives," [id. at 2]. For the reasons that follow, the Court finds

7

that the parties entered into a valid and enforceable contract, which includes an arbitration clause encompassing the claims raised by Clark.

## A.    <u>Legal Standard</u>

"Section 2 [of the FAA] embodies the national policy favoring arbitration and places arbitration agreements on equal footing with all other contracts," <u>Buckeye Check Cashing, Inc. v. Cardegna</u>, 546 U.S. 440, 443 (2006), providing:

> A written provision in any . . . contract evidencing a transaction involving commerce to settle by arbitration a controversy thereafter arising out of such contract or transaction, or the refusal to perform the whole or any part thereof, or an agreement in writing to submit to arbitration an existing controversy arising out of such a contract, transaction, or refusal, shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract.

9 U.S.C. § 2.  "The 'principal purpose' of the FAA is to 'ensur[e] that private arbitration agreements are enforced according to their terms.'"  <u>AT&T Mobility LLC v. Concepcion</u>, 563 U.S. 333, 344 (2011) (alteration in original) (citations omitted).[7]  "The FAA creates a strong federal policy in favor of arbitration." <u>Picard</u>

---

[7] "The FAA applies to all contracts involving interstate commerce."  <u>See</u> <u>Kong v. Allied Pro. Ins. Co.</u>, 750 F.3d 1295, 1303 (11th Cir. 2014) (citing 9 U.S.C. §§ 1-2). Discover contends, and Clark does not dispute, that Clark's Cardmember Agreement with Discover was a contract involving interstate commerce.  <u>See</u> [Doc. 4-1 at 7-9; Doc. 8]; <u>see also</u> <u>Comrey v. Discover Fin. Servs., Inc.</u>, 806 F. Supp. 2d 778, 782 (M.D. Pa. 2011) (citations omitted) (noting it was undisputed that the credit card agreement and transactions involved commerce and finding that the arbitration clause fell within the scope of the FAA).  Indeed, the arbitration

v. Credit Sols., Inc., 564 F.3d 1249, 1253 (11th Cir. 2009) (per curiam) (citation

omitted).  "Accordingly, courts 'rigorously enforce' arbitration agreements," id.

(citation omitted), and "'[a]ny doubts concerning the scope of arbitrable issues

should be resolved in favor of arbitration,'" Chambers v. Groome Transp. of Ala.,

41 F. Supp. 3d 1327, 1334 (M.D. Ala. 2014) (quoting Moses H. Cone Mem'l Hosp.

v. Mercury Constr. Corp., 460 U.S. 1, 24-25 (1983)).  "Federal statutory claims are

as a rule arbitrable[.]"  Anders v. Hometown Mortg. Servs., Inc., 346 F.3d 1024,

1030 (11th Cir. 2003) (citing Gilmer v. Interstate/Johnson Lane Corp., 500 U.S. 20,

28 (1991)).

    In resolving a motion to compel arbitration, courts consider whether: "(1)

there is a valid written agreement to arbitrate; (2) the issue [sought to be arbitrated]

is arbitrable under the agreement; and (3) the party asserting the claims has failed

---

provision within the Cardmember Agreement provides that it "is governed by the
[FAA]," [Doc. 4-2 at 9], and the "FAA applies to all arbitration agreements that
involve interstate commerce in any way," Coleman v. CVS Rx Servs., Inc., CV 119-
119, 2019 WL 5700746, at *1 (S.D. Ga. Nov. 4, 2019) (citation omitted).  Moreover,
as Discover asserts, and Clark does not dispute, Clark, a Georgia resident, brings
claims against Discover, a Delaware bank, "arising out of Discover's alleged
wrongdoing relating to [Clark's] Discover credit card Account," that in "order to
open the Account, Discover sent a credit card and the [Cardmember] Agreement
to [Clark] in the mail using interstate commerce," and Clark's "payments on the
Account were received and deposited by Discover outside the State of Georgia,"
thereby satisfying the interstate commerce requirement.  [Doc. 4-1 at 9 (citation
omitted) (citing [Doc. 4-2 ¶¶ 6, 9, 13-14])].

or refused to arbitrate the claims."[8]  Wallace v. Rick Case Auto, Inc., 979 F. Supp. 2d 1343, 1347 (N.D. Ga. 2013) (alteration in original) (citation and internal marks omitted), adopted at 1345; see also Williams v. Experian, CIVIL ACTION NO. 1:24-cv-04152-LMM-RDC, 2025 WL 1733183, at *6 (N.D. Ga. June 17, 2025) (alteration, citation, and internal marks omitted) ("In ruling on a motion to compel arbitration, courts must first determine whether the parties agreed to arbitrate, and then assess whether legal constraints external to the parties' agreement forecloses arbitration."), adopted by 2025 WL 2146367, at *1 (N.D. Ga. July 15, 2025).  "The first step requires courts to determine whether a given dispute falls within the scope of a valid arbitration agreement," and in "making this determination, the FAA instructs that any doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration."  Thomas v. Citi Trends, Inc., CIVIL ACTION NO.: 4:23-cv-175, 2025 WL 817127, at *4 (S.D. Ga. Mar. 14, 2025) (citation and internal marks omitted).

"When determining whether the parties agreed to arbitrate their dispute, a court applies state law governing the formation of contracts, giving due regard to

---

[8] It is clear that Clark has refused to arbitrate his claims against Discover by filing this action.  See FR 8 Singapore Pte. Ltd. v. Albacore Mar. Inc., 754 F. Supp. 2d 628, 632 (S.D.N.Y. 2010) (first alteration in original) (quoting LAIF X SPRL v. Axtel, S.A. de C.V., 390 F.3d 194, 198 (2d Cir. 2004)) ("In a paradigmatic case, '[a] party has refused to arbitrate if it commences litigation[.]'").

the federal policy favoring arbitration." <u>Jordan v. Comcast Cable Commc'ns Mgmt., LLC</u>, 1:14-cv-3622-WSD, 2016 WL 452145, at *4 (N.D. Ga Feb. 4, 2016) (citing <u>Caley v. Gulfstream Aerospace Corp.</u>, 428 F.3d 1359, 1368 (11th Cir. 2005)); <u>see also</u> <u>Antonetti v. Activision Blizzard, Inc.</u>, 764 F. Supp. 3d 1309, 1315 (N.D. Ga. 2025) (citation omitted).[9]  Additionally, "parties to a contract may agree to have an arbitrator, rather than a court, decide issues of arbitrability, including whether an arbitration agreement is valid and/or enforceable." <u>Ytech 180 Units Miami Beach Invs. LLC v. Certain Underwriters at Lloyd's, London</u>, 359 F. Supp. 3d 1253, 1264 (S.D. Fla. 2019) (citations omitted).  "Such agreements to arbitrate arbitrability are generally referred to as 'delegation claus[es],'" and "will be upheld if [they]

---

[9] "The [Cardmember] Agreement provides that it is governed by Delaware law," and this "Court applies Georgia choice of law and conflict of laws rules in determining whether to give such a provision effect." <u>Samadi v. MBNA Am. Bank, N.A.</u>, No. CV 104-137, 2005 WL 6111467, at *3 (S.D. Ga. June 10, 2005) (citations omitted), adopted by 2005 WL 6111614, at *1 (S.D. Ga. July 8, 2005); <u>see also</u> [Doc. 4-2 at 9 ("This Agreement is governed by applicable federal law and by Delaware law.")].  Given that Discover is a Delaware-based banking institution "with its principal place of business in that [s]tate, there is no reason to suppose that the choice of law provision is unreasonable." <u>Samadi</u>, 2005 WL 6111467, at *3 (footnote omitted); <u>see also</u> [Doc. 4-2 ¶ 6].  "Generally speaking, Georgia courts enforce choice of law provisions unless they are contrary to public policy." <u>Samadi</u>, 2005 WL 6111467, at *3 (citing <u>Nationwide Logistics, Inc. v. Condor Transp., Inc.</u>, 606 S.E.2d 319, 322 (Ga. Ct. App. 2004)).  "Because [Clark] has not shown that enforcement of the choice of law provision contravenes public policy, Delaware law applies." <u>Daniel v. Chase Bank USA, N.A.</u>, 650 F. Supp. 2d 1275, 1288 n.8 (N.D. Ga. 2009); <u>see also</u> <u>Samadi</u>, 2005 WL 6111467, at *3.

represent[] the parties' 'clear and unmistakable' intent to allow issues of arbitrability to be decided by an arbitrator." Id. (first alteration in original) (citation omitted). "If a court finds the parties agreed to arbitrate the dispute, then, under the second step, the party opposing arbitration must show that external legal constraints nonetheless make the claims unsuitable for arbitration." Thomas, 2025 WL 817127, at *4 (citations omitted).

**B.    Merits of Discover's Motion to Compel Arbitration, [Doc. 4]**

Discover moves to compel arbitration and stay the case pending the outcome in arbitration, [Doc. 4], arguing that all of Clark's "claims against [it] are subject to a binding and enforceable written arbitration agreement," [id. at 1]. Clark opposes Discover's motion, asserting that (1) Discover "waived its right to arbitrate by delaying its motion"; (2) the arbitration agreement is unconscionable; (3) his "FCRA claims fall outside the scope of the agreement"; and (4) requiring arbitration "undermines the FCRA's public policy objectives." [Doc. 8 at 2]. The Court will address each of these arguments in turn.

**1.    *Waiver of Arbitration***

Clark first argues that Discover "waived its right to arbitrate by delaying the assertion of arbitration until April 22, 2025, 60 days after receiving [his c]omplaint on February 21, 2025, and after waiving service on March 3, 2025." [Doc. 8 at 4 (citation omitted)]. Clark also argues that he "was prejudiced by [Discover's]

delay," since he "invested significant time and effort preparing for litigation in this Court, including drafting and filing the [c]omplaint and monitoring the docket," but that Discover's "last-minute motion to compel arbitration, filed on the final day to respond, forced [him] to redirect his efforts to oppose arbitration, causing undue burden and expense." [Id. (citation omitted)]. In response, Discover maintains that the "purported delay" of filing the motion to compel arbitration "on its deadline to respond to [Clark's c]omplaint" does not "constitute waiver as a matter of law," but rather, it "timely filed its [m]otion," as it "sought to compel [Clark's] claims to arbitration in its initial appearance," "has not acted in a manner inconsistent with its intent to arbitrate," and "has not substantially participated in the litigation[] as no discovery has occurred." [Doc. 13 at 1-3 (internal marks omitted)]. Discover also maintains that Clark "cannot show prejudice, as this case is in its infancy, and the only action [it] has taken is to file [the present m]otion to [c]ompel [a]rbitration and [m]otion to [s]tay [d]iscovery." [Id. at 3]. For the reasons that follow, the Court agrees with Discover and finds that it has not waived its arbitration rights.

First, the arbitration provision in the Cardmember Agreement, by incorporating the AAA Rules, "delegates the issue of waiver to the arbitrator, and the arbitrator must decide whether [Discover] waived its arbitration rights." Lawrence v. Experian Info. Sols., Inc., CIVIL ACTION NO. 1:25-CV-288-MHC-

CMS, 2025 WL 1431272, at *7 (N.D. Ga. May 15, 2025) (citation omitted), adopted by 2025 WL 1650380, at *1 (N.D. Ga. June 3, 2025); see also [Doc. 4-2 at 9-10; AAA Rules, R-7]. However, even were this issue not delegated to the arbitrator, Discover "has not waived its arbitration rights." Lawrence, 2025 WL 1431272, at *7.

"Courts conduct a two-part inquiry to determine whether a party has waived its arbitration rights." Id. (citation and internal marks omitted). "First, courts consider whether under the totality of the circumstances, the party has acted inconsistently with the arbitration right," and if "a party has done so, courts consider whether the party's conduct has in some way prejudiced the other party." Id. (citation and internal marks omitted). Because "federal law favors arbitration, any party arguing waiver of arbitration bears a heavy burden of proof." Pope v. Dillard's Inc., CIVIL ACTION NO. 1:14–CV–1793–AT, 2014 WL 12323688, at *4 (N.D. Ga. Nov. 26, 2014) (citation and internal marks omitted).

In the present case, Discover "did not act inconsistently with its arbitration right," since in lieu of answering the complaint, it filed a motion to compel arbitration on April 22, 2025, which was "the only substantive document that [Discover] filed in the case" following Clark's filing of the complaint on February 21, 2025, Lawrence, 2025 WL 1431272, at *7; see also [Docs. 1 & 4], and indeed, "a defendant can file a motion to compel arbitration in lieu of an answer," Runzi v.

14

Synchrony Bank, 713 F. Supp. 3d 1360, 1362 n.3 (N.D. Ga. 2024) (citations omitted). "Under the circumstances, [Discover's] participation in the litigation was not significant enough to support a finding that it acted inconsistently with its contractual right to arbitrate."   Lawrence, 2025 WL 1431272, at *7 (citation and internal marks omitted); see also Cook v. Northstar Location Servs., LLC, Civil Action No. 1:16-cv-04186-MHC-LTW, 2018 WL 1804409, at *6 (N.D. Ga. Jan. 12, 2018) (rejecting plaintiff's contention that defendant acted inconsistently with right to arbitrate by waiting three months to file a motion to compel, since plaintiff cited "no law to show that waiting for such a short period to file a motion to compel indicate[d] that a defendant ha[d] acted inconsistently with its right to arbitrate"), adopted by 2018 WL 1833500, at *1 (N.D. Ga. Jan. 31, 2018). Accordingly, the Court finds Discover did not waive its right to arbitrate.  See Bentley v. Van Michael Salon, Inc., CIVIL ACTION FILE NO. 1:19-cv-05236-TWT-AJB, 2020 WL 10056275, at *13 (N.D. Ga. Oct. 29, 2020) (citation omitted) (finding "no basis for determining that [d]efendant's invocation of the right to arbitration was anything but timely" where defendant "filed the [] motion to compel in lieu of filing an answer"), adopted by 2020 WL 10056188, at *1 (N.D. Ga. Dec. 8, 2020); Campbell v. Verizon Wireless, LLC, Civil Action No. 14–0517–WS–N, 2015 WL 416484, at *7 (S.D. Ala. Jan. 29, 2015)  (internal marks omitted) (finding "any suggestion that [defendant's] minimal delay in demanding arbitration has

15

prejudiced [plaintiff] would be frivolous" where defendant filed its motion to compel arbitration "mere days after being served with process[] and just 32 days after [plaintiff] filed suit against it").

### 2. *Valid Agreement to Arbitrate*

Discover also asserts that the parties entered into a valid, written agreement to arbitrate. [Doc. 4-1 at 9-12]. Clark does not argue otherwise. See generally [Doc. 8]. Nevertheless, the Court will address whether the parties formed a valid agreement to arbitrate Clark's claims in this case. This inquiry is based on contract law governing offer, acceptance, and consideration. See Cohen v. Formula Plus, Inc., 750 F. Supp. 2d 495, 504 (D. Del. 2010); see also Johnson v. Macy's S., LLC., No. 1:07-cv-1256-WSD, 2007 WL 2904126, at *3 (N.D. Ga. Sept. 27, 2007) (citation omitted).

Discover has presented evidence establishing that when Clark "opened his Discover credit card Account, he was mailed a copy of the [Cardmember] Agreement along with his credit card"; that "[n]either the [Cardmember] Agreement nor the credit card were returned as undeliverable";[10] and that after

---

[10] "When a defendant has produced evidence showing that it sent an item properly mailed . . . there arises a rebuttable presumption that it was received by the addressee." Dixon v. Synchrony Fin., CIVIL ACTION FILE NO. 1:15-CV-00406-RWS-JFK, 2015 WL 12720290, at *5 (N.D. Ga. Aug. 18, 2015) (citations and internal

"receiving the credit card and [Cardmember] Agreement, [Clark] used the credit card to make purchases and did not cancel the Account, which constituted acceptance of the [Cardmember] Agreement's terms," including the arbitration provision.  [Doc. 4-1 at 12 (citing [Doc. 4-2 ¶¶ 9-10, 12-15; id. at 7-10])].  The Cardmember Agreement specifically advised Clark that he "accept[ed the Cardmember] Agreement if [he did] not cancel [his] Account within 30 days after receiving a [c]ard," or if he "or an Authorized User use[d] the Account."  [Doc. 4-2 at 7].  It also advised him that he could reject the arbitration clause as explained in that section, which included that he could reject arbitration if he provided written notice of rejection within 30 days of his receipt of the credit card after the credit card account was opened, which he did not do.  [Id. at 7, 10]; see also [id. ¶ 11].  Discover also has proffered evidence showing that Clark activated and made purchases on the credit card, and that he also made several payments associated with this credit card.  [Id. ¶¶ 13-14]; see also [id. at 12-107].  Therefore, Clark

---

marks omitted), adopted by 2015 WL 12723144, at *1 (N.D. Ga. Sept. 10, 2015); see also Taylor v. First N. Am. Nat'l Bank, 325 F. Supp. 2d 1304, 1311 (M.D. Ala. 2004).

accepted the terms of the Cardmember Agreement, including the arbitration provision.

Clark does not dispute that he entered into a valid agreement to arbitrate, <u>see</u> [Doc. 8], and "a party seeking to avoid arbitration must unequivocally deny that an agreement to arbitrate was reached and must offer some evidence to substantiate the denial. . . . More specifically, [the court] require[s] a party resisting arbitration to substantiate[ ] the denial of the contract with enough evidence to make the denial colorable," <u>Dixon</u>, 2015 WL 12720290, at *4 (alterations in original) (citations and internal marks omitted); <u>see also</u> <u>Home Buyers Warranty Corp. v. Jones</u>, C.A. No. 15-mc-324-RGA-MPT, 2016 WL 2350103, at *4 (D. Del. May 4, 2016) (citation and internal marks omitted) ("A naked assertion . . . by a party to a contract that it did not intend to be bound by the terms thereof is insufficient to place in issue the making of the arbitration agreement"), adopted by 2016 WL 3457006, at *3 (D. Del. June 21, 2016).  In fact, "[t]he party opposing a motion to compel arbitration or to stay litigation pending arbitration has the affirmative duty of coming forward by way of affidavit or allegation of fact to show cause why the court should not compel arbitration," and "[t]his burden is not unlike that of a party seeking summary judgment; the party opposing arbitration should identify those portions of the pleadings, depositions, answers to interrogatories, and affidavits which support [his] contention."  <u>Galan v. Delaware</u>, Case No. 14-cv-

23446-UU, 2014 WL 12029368, at *2 (S.D. Fla. Dec. 29, 2014) (citations and internal marks omitted). The Court thus "finds that [Clark] has not unequivocally denied the existence of any arbitration agreement with [Discover] and, in light of the evidence presented by [Discover], that []he has failed to produce 'some evidence' to establish a 'colorable' denial of the existence of the agreement in this case." Dixon, 2015 WL 12720290, at *5; see also Honig v. Comcast of Ga. I, LLC, 537 F. Supp. 2d 1277, 1283 (N.D. Ga. 2008) (citation and internal marks omitted) (explaining that "a party cannot place the making of the arbitration agreement in issue simply by opining that no agreement exists," but "must substantiate the denial of the contract with enough evidence to make the denial colorable").

"[C]ourts routinely enforce unsigned credit card contracts where the contract is sent to a recipient, it is not returned as undeliverable, and [] the cardholder then subsequently demonstrates his . . . assent to its terms by using the credit card that was provided." Dooley v. Federated Law Grp., PLLC, CIVIL ACTION FILE NO. 1:16-cv-04703-SCJ-CMS, 2018 WL 1807013, at *6 (N.D. Ga. Jan. 22, 2018) (citations omitted), adopted by 2018 WL 1830788, at *1 (N.D. Ga. Feb. 12, 2018); see also Bazemore v. Jefferson Cap. Sys., LLC, 827 F.3d 1325, 1332 (11th Cir. 2016). The Cardmember Agreement sent to Clark set forth the terms governing acceptance of the contract, namely that failing to cancel within 30 days of receipt of the credit card, or using the credit card, would constitute an agreement to abide

by its terms, [Doc. 4-2 at 7, 10], and "[i]t is therefore clear that when [Clark] received the [Cardmember] Agreement and used the [c]redit [c]ard, he agreed to the terms of the arbitration clause," <u>Mitchell v. Sajed</u>, Civil Action No. 3:13–CV–312, 2013 WL 3805041, at *3 (E.D. Va. July 22, 2013).[11]  Accordingly, the Court finds the parties entered into a valid and enforceable agreement to arbitrate.

---

[11] "Under Delaware law, use of a credit card will bind the card holder to a cardmember agreement governing a credit card account." <u>Dwyer v. Discover Fin. Servs.</u>, Civil Action No. WMN-15-2322, 2015 WL 7754369, at *2 (D. Md. Dec. 2, 2015) (citation omitted); <u>see also</u> <u>Jordan v. Equifax Info. Servs., LLC</u>, CIVIL ACTION FILE NO. 3:20-cv-00199-TCB-RGV, 2021 WL 4988315, at *8 (N.D. Ga. July 21, 2021) (citation omitted), adopted by 2021 WL 4988316, at *3 (N.D. Ga. Sept. 30, 2021).  The evidence in this case reflects that Clark used the credit card after opening his account with Discover.  [Doc. 4-2 ¶¶ 13-14]; <u>see also</u> [<u>id.</u> at 12-107].  Clark does not dispute the fact that he entered into an agreement whereby Discover extended credit to him for which he promised to repay, nor does he "deny that []he accepted the terms of the [account agreement] by . . . using [his credit card] to make purchases," <u>Dooley</u>, 2018 WL 1807013, at *7; <u>see also</u> [Doc. 8].  The Cardmember Agreement "sent to [Clark] set forth the terms governing acceptance of the contract, namely that using the [account ] would constitute an agreement to abide by its terms," and "it is therefore clear that when [Clark] received the [Cardmember] Agreement and used the credit card, he agreed to the terms of the arbitration clause." <u>Leslie v. Barclays Bank Del.</u>, CIVIL ACTION NO. 1:17-cv-02514-ELR-RGV, 2017 WL 8220505, at *5 (N.D. Ga. Oct. 13, 2017) (alterations, footnote, citation, and internal marks omitted), adopted by 2018 WL 1320082, at *1 (N.D. Ga. Ja. 3, 2018).  "By using the account, [ Clark] accepted the terms and conditions of the [Cardmember] Agreement." <u>Russo v. Trans Union, LLC</u>, CIVIL ACTION No. 19-4007, 2020 WL 4937108, at *4 (E.D. Pa. Aug. 24, 2020) (applying Delaware law to conclude that plaintiff entered into a valid agreement to arbitrate).  Accordingly, the Court concludes that the parties entered into a binding agreement to arbitrate.  <u>See</u> <u>Leslie</u>, 2017 WL 8220505, at *5; <u>Ineman v. Kohl's Corp.</u>, No. 14-cv-398-wmc, 2015 WL 1399052, at *5 (W.D. Wis. Mar. 26, 2015) (explaining that because "defendant ha[d] presented evidence, which plaintiff [did] not dispute, of her continued use of the [] credit card," "[e]ven accepting

3.      *Scope of Arbitration Agreement*

Clark argues that the arbitration clause does not encompass his claims and contends that duties under the FCRA "exist independently of the contractual relationship governed by the cardholder agreement," and that his "claims arise from [Discover's] statutory violations—namely, inaccurate reporting and failure to investigate—not from the contract itself." [Doc. 8 at 6]. Clark therefore contends that his claims, which did not "aris[e] from the contract," are "not subject to arbitration." [Id. (citation omitted)]. Despite Clark's argument to the contrary, the Court finds that "[t]he [claims asserted] by [Clark] fall within the scope of the arbitration clause agreed to by the parties." Mitchell, 2013 WL 3805041, at *4.

The arbitration provision included within the Cardmember Agreement specifically provides:

> In the event of a dispute between [Clark] and [Discover] *arising out of or relating to [the] Account or any other dispute between [Clark] or [Discover]*, including, for example, a dispute based on a federal or state statute or local ordinance ("Claim"), either [Clark] or [Discover] may choose to resolve the Claim by binding arbitration . . . instead of in court. Any Claim (except for a Claim challenging the validity or enforceability of this arbitration agreement, including the Class Action Waiver) may be resolved by binding arbitration if either side requests it. THIS MEANS IF EITHER [CLARK] OR [DISCOVER]

---

plaintiff's contention that she did not sign, read, review or receive the [] [c]ardmember [a]greement (or more accurately, [did] not recall doing so), plaintiff's admitted use of the credit card form[ed] a sufficient basis to find that she assented to its terms, including the arbitration provision").

CHOOSE ARBITRATION, NEITHER PARTY WILL HAVE THE
RIGHT TO LITIGATE SUCH CLAIM IN COURT OR TO HAVE A
JURY TRIAL.   ALSO DISCOVERY AND APPEAL RIGHTS ARE
LIMITED IN ARBITRATION.

[Doc. 4-2 at 9 (emphasis added)].

In his complaint, Clark asserts a claim under the FCRA, as well as for
negligence, arising out of Discover's alleged "reporting [of] inaccurate
information" with respect to the credit card account at issue, "including re-aging
the account," and failure "to conduct a reasonable investigation of [Clark's]
dispute[.]" [Doc. 1 ¶¶ 41-48].   Despite Clark's argument to the contrary, his claims
all relate in some way to the credit card account with Discover and are based on a
federal statutory provision and a state law claim based on tort, and are therefore
encompassed by the arbitration provision in the Cardmember Agreement.[12]   See

---

[12] Moreover, the arbitration clause within the Cardmember Agreement specifically
provides that the "rules for the arbitration will be those in this arbitration
agreement and the procedures of the AAA," [Doc. 4-2 at 9], and the AAA's rules
provide that the "arbitrator shall have the power to rule on their own jurisdiction,
including any objections with respect to the existence, scope, or validity of the
arbitration agreement," AAA Rules, R-7, and thus, it appears that any argument
as to the scope of the claims covered by the arbitration clause is an argument for
the arbitrator to resolve, see Jones v. Waffle House, Inc., 866 F.3d 1257, 1262, 1267
(11th Cir. 2017) (discussing the delegation provision and whether "parties have
manifested a clear and unmistakable intent to arbitrate gateway issues," including
questions regarding "the interpretation, applicability, enforceability, and
formation of the agreement"); see also Mobile Real Est., LLC v. NewPoint Media
Grp., LLC, 460 F. Supp. 3d 457, 470 (S.D.N.Y. 2020) (alterations, citations, and
internal marks omitted) ("When parties explicitly incorporate rules that empower
an arbitrator to decide issues of arbitrability, the incorporation serves as clear and

Brown v. ITT Consumer Fin. Corp., 211 F.3d 1217, 1221 (11th Cir. 2000) (affirming district court's order enforcing arbitration clause and compelling arbitration of statutory claims); Ware v. Citigroup Fin. Prods., Inc., CIVIL ACTION FILE NO. 1:13-cv-00369-CC-GGB, 2014 WL 12859988, at *5 (N.D. Ga. Feb. 10, 2014) (citation and internal marks omitted) (finding that because "the claims covered by the Arbitration Agreement unequivocally include[d] claims based on contract and/or statutory or regulatory provisions, [p]laintiff's claims under . . . the FCRA [fell] squarely within the terms of the agreement"), adopted by 2014 WL 12860017, at *1 (N.D. Ga. Mar. 5, 2014); Athon v. Direct Merchants Bank, No. 5:06-CV-1 (CAR), 2007 WL 1100477, at *5 (M.D. Ga. Apr. 11, 2007) (first two alterations in original) (internal marks omitted) (finding that where the arbitration provision stated that it applied to "[a]ny claim, dispute or controversy . . . arising from or relating to this Account" and plaintiff's complaint alleged that credit card issuer's collection practices in attempting to collect past due amounts on the account violated the Fair

---

unmistakable evidence of the parties' intent to delegate such issues to an arbitrator."); Brandon, Jones, Sandall, Zeide, Kohn, Chalal & Musso, P.A. v. MedPartners, Inc., 203 F.R.D. 677, 685 (S.D. Fla. 2001) (citation omitted) (explaining that "by designating the AAA in the Agreement to arbitrate any dispute and not designating any alternate set of procedural rules or expressing any limitation on the applicability of the Rule 1, which was in effect at the time of the Agreement, the parties contracted via a theory of incorporation that the Rules of the AAA would govern arbitration matters"), aff'd in part, appeal dismissed in part, 312 F.3d 1349 (11th Cir. 2002) (per curiam).

Debt Collection Practices Act, "[t]here [was] no doubt that all of Plaintiff's claims relate[d] to the [] credit card account, and [were], therefore, subject to the Arbitration Agreement."); <u>see also</u> <u>Comrey</u>, 806 F. Supp. 2d at 785 (citation omitted) (finding plaintiff's FCRA claim against defendant arose "directly from her credit card account" and "clearly relate[d] to her cardmember agreement" and therefore fell "within the broad scope of the [defendant's] arbitration agreement"). Therefore, "under the plain language of the arbitration clause, [Clark's] claims 'shall be resolved exclusively and finally by binding arbitration.'" <u>Mitchell</u>, 2013 WL 3805041, at *4 (citation omitted).

### 4. *Enforceability of the Arbitration Agreement*

Clark argues that any arbitration agreement in this case is "unenforceable under Georgia law due to unconscionability." [Doc. 8 at 5]. In particular, Clark asserts that "[p]rocedurally, the arbitration clause was likely buried in fine print within the [Cardmember A]greement, presented on a take-it-or-leave-it basis, and not adequately disclosed to [him]," and that "[s]ubstantively, the agreement may impose excessive fees, limit [his] statutory remedies under the FCRA . . ., or be

overly one-sided by allowing [Discover] to litigate while forcing [him] to arbitrate." [Id.].[13]

"The Supreme Court has explained that where an arbitration agreement contains a delegation provision—committing to the arbitrator the threshold determination of whether the agreement to arbitrate is enforceable—the courts only retain jurisdiction to review a challenge to that specific provision." Parnell v. CashCall, Inc., 804 F.3d 1142, 1144 (11th Cir. 2015) (citing Rent-A-Ctr., W., Inc. v. Jackson, 561 U.S. 63, 72 (2010)). "Absent a direct challenge, [the Court] must treat the delegation provision as valid and allow the arbitrator to determine the issue of arbitrability." Id. at 1148 (citation omitted); see also Jeffries v. Wells Fargo & Co., 2:16-cv-01987-LSC, 2017 WL 3149513, at *4 (N.D. Ala. July 25, 2017) (alteration in original) (citation and internal marks omitted) ("If a contract's arbitration agreement includes a delegation provision, then a plaintiff seeking to avoid arbitration must direct[ly] challenge the delegation provision, rather than the arbitration provision generally."). "Even where a particular argument may apply to the contract as a whole, to the arbitration agreement, and to the delegation

---

[13] Clark also "requests an evidentiary hearing to present evidence, including his affidavit, that he was unaware of the clause and did not knowingly assent to it." [Doc. 8 at 5].

clause, the plaintiff must overtly attack the delegation clause." <u>Jeffries</u>, 2017 WL 3149513, at *4 (citations omitted).

The arbitration provision contained within the Discover Cardmember Agreement incorporates "the procedures of the AAA," [Doc. 4-2 at 9], which specifies that the arbitrator "shall have the power to rule on their own jurisdiction, including any objections with respect to the existence, scope, or validity of the arbitration agreement," as well as "the power to determine the existence or validity of a contract of which an arbitration clause forms a part," AAA Rules, R-7(a)-(b), and "unambiguously commits to the arbitrator the power to determine the enforceability of the agreement to arbitrate," <u>Parnell</u>, 804 F.3d at 1148; <u>see also</u> <u>JPay, Inc. v. Kobel</u>, 904 F.3d 923, 937–38 (11th Cir. 2018) (finding it was sufficient that the parties' agreement mentioned the AAA Arbitration Rules for the Resolution of Consumer Related Disputes and Commercial Arbitration Rules, which gave the arbitrator the power to rule on his or her own jurisdiction, including any objections with respect to the existence, scope or validity of the arbitration agreement, thereby "delegating questions of arbitrability to the arbitrator"); <u>Scharf v. Bitwarden, Inc.</u>, Case No. 3:23-cv-633-BJD-MCR, 2024 WL 5671947, at *7 (M.D. Fla. Feb. 12, 2024) (footnote and citations omitted) (finding the "incorporation of the JAMS Comprehensive Arbitration Rules and Procedures into the parties' Agreement [was] sufficient to show that the parties clearly and

26

unmistakenly agreed to delegate questions of arbitrability to an arbitrator"), adopted by 2024 WL 5671945, at *1 (M.D. Fla. Mar. 29, 2024); Yakovee v. Miami Heat Ltd. P'ship, Case Number: 20-20540-CIV-MORENO, 2020 WL 9256557, at *3 (S.D. Fla. Apr. 30, 2020) (citations omitted) (explaining that "[c]ourts have held that where an arbitration agreement incorporates the AAA Rules, as was done here, there is clear evidence that the parties intended for the arbitrator to decide the issue of a contract's validity").    Because the arbitration provision in the Cardmember Agreement incorporates "the procedures of the AAA," [Doc. 4-2 at 9], which contains a delegation provision, it is "well-settled that an arbitrator decides whether an agreement is unconscionable," Yakovee, 2020 WL 9256557, at *6 (citation omitted).[14]    Accordingly, the Court lacks jurisdiction to consider Clark's arguments as to the enforceability of the arbitration agreement.  See Parm v. Nat'l Bank of Cal., N.A., 835 F.3d 1331, 1335 (11th Cir. 2016) ("Only if [the Court] determine[s] that the delegation clause is itself invalid or unenforceable may [the Court] review the enforceability of the arbitration agreement as a whole."); Bey v.

---

[14] "Importantly, the mere presence of a delegation clause in a contract is not dispositive."  Ytech 180 Units Miami Beach Invs. LLC, 359 F. Supp. 3d at 1264.  "A delegation clause operates as a defense that the defendant must raise to rely upon it," but where, as here, "a delegation clause is properly raised by the defendant and never specifically challenged by the plaintiff, the FAA directs the court to treat the clause as valid and compel arbitration."  Id. (citations omitted); see also [Doc. 4-1 at 15-17].

XPO Logistics, Inc., Case No. 6:16-cv-2195-Orl-37KRS, 2017 WL 3923030, at *4 (M.D. Fla. Sept. 7, 2017) (citations omitted) (concluding that because "[p]laintiffs ha[d] failed to challenge the [d]elegation [p]rovision specifically, the Court [was] required to treat it as valid under § 2 of the FAA and must enforce it under §§ 3 and 4, leaving any challenge to the enforceability of the [a]rbitration [p]rovision as a whole for the arbitrator," and thus, that the Court could not "examine the merits of [p]laintiffs' unconscionability argument"); see also Rent-A-Ctr., 561 U.S. at 73 (declining to consider plaintiff's unconscionability challenges because none of them were "specific to the delegation provision"); Sayers v. Activision Blizzard, Inc., CIVIL ACTION NO.: 4:24-cv-00078-RSB-CLR, 2025 WL 2553735, at *14 (S.D. Ga. Sept. 4, 2025) (finding plaintiff's challenges to the validity of the agreement as a whole was for the arbitrator); McGhee v. Mariner Fin., LLC, CIVIL ACTION FILE NO. 1:19-CV-00934-TWT-JFK, 2019 WL 5491825, at *6 (N.D. Ga. Aug. 7, 2019) (finding that the "[a]greement to arbitrate [p]laintiff's claims – as well as [p]laintiff's claims that the [a]greement or the identified provisions therein [were] procedurally and substantively unconscionable – [were] delegated to the arbitrator and not within the purview of th[e] court" where the plaintiff had "not specifically attacked the delegation provisions" or "responded to [d]efendant's arguments that the provisions should be enforced"), adopted sub nom. McGhee v. Equifax Info. Servs., LLC, CIVIL ACTION FILE NO. 1:19-CV-934-TWT, 2019 WL

5491811, at *1 (N.D. Ga. Sept. 5, 2019); <u>Ytech 180 Units Miami Beach Invs. LLC</u>, 359

F. Supp. 3d at 1267 (concluding that plaintiff's dispute to the arbitration clause's

validity was "foreclosed by the delegation clause, which expressly commit[ted]

that issue to an arbitrator"); <u>Steingruber v. Family Dollar Stores of Fla., Inc.</u>, CASE

NO. 3:15-cv-199-J-20JBT, 2015 WL 10818618, at *3 (M.D. Fla. Aug. 13, 2015) ("In the

[r]esponse to [d]efendant's motion, [p]laintiff challenges the [a]greement on

various grounds but does not specifically challenge the validity of the delegation

clause in the written [a]rbitration [a]greement," and "[t]herefore, this Court finds

the threshold question of enforceability is proper[ly] before an arbitrator and not

before this Court.").[15]

### 5.    *Public Policy Concerns*

Clark also contends that "[c]ompelling arbitration would undermine the

FCRA's public policy goals of ensuring accurate credit reporting and protecting

---

[15] Even if this issue was properly before the Court, the Court does not find the arbitration provision contained within the Cardmember Agreement unconscionable for the reasons offered by Discover in its reply brief. <u>See</u> [Doc. 13 at 3-9]. Indeed, while Clark contends that the arbitration provision was "buried in fine print within the [Cardmember A]greement" and "presented on a take-it-or-leave-it basis," [Doc. 8 at 5], the first section of the agreement specified acceptance and notified Clark of an arbitration provision, [Doc. 4-2 at 7], and the provision itself was entitled "Arbitration" in bold print and in all capital letters and in the same size font as the remainder of the entire agreement, [<u>id.</u> at 9]. Moreover, the arbitration provision included an opt out notice in bold print, advising Clark that he had the right to reject the arbitration agreement provided he notified Discover within 30 days of his receipt of the credit card, [<u>id.</u> at 10], and his take it or leave it

consumers" because it "may limit [his] access to [certain] remedies, particularly if the agreement imposes high fees or restricts damages." [Doc. 8 at 6]. He further contends that his "ability to enforce his FCRA rights would be compromised in arbitration, contrary to public policy." [Id. at 7]. In response, Discover maintains that Clark "has the ability to obtain the same relief under the FCRA in arbitration as he does in this Court," and therefore, "his argument as it relates to public policy is without merit." [Doc. 13 at 9 n.1]. The Court agrees with Discover on this point.

"Arbitration is consistent with federal policy; indeed, the FAA reflects a liberal federal policy favoring arbitration and requires courts to vigorously enforce agreements to arbitrate." Lawrence, 2025 WL 1431272, at *7 (citation and internal marks omitted). Despite Clark's assertions to the contrary, "nothing suggests that requiring [his] claims to proceed to arbitration would undermine [his] statutory rights." Id. Clark "may still pursue [his] claims, just in a different forum." Id. There simply "is no reason to believe that [ Clark] will be unable to vindicate effectively his rights under the FCRA in arbitration." Sarver v. Trans Union, LLC,

---

argument is therefore without merit. Clark also speculates about excessive fees, limitations on his statutory remedies under the FCRA, and the agreement being "overly one-sided," [Doc. 8 at 5]; however, as Discover points out, "[s]ubstantive unconscionability involves the contractual terms themselves," and Clark simply has not shown that he "would incur higher costs if he arbitrated his claims," or that the arbitration provision "deprives him of any relief he could obtain under the FCRA." [Doc. 13 at 7-9 (footnote and citations omitted)].

264 F. Supp. 2d 691, 693 (N.D. Ill. 2003). In light of the Court's findings, it is therefore **RECOMMENDED** that Discover's motion to compel arbitration, [Doc. 4], be **GRANTED** and that its request to stay this case pending arbitration be **DENIED** and that this action be **DISMISSED**.[16]

## III. CONCLUSION

For the reasons stated, Discover's motion to stay, [Doc. 11], and unopposed motion to extend discovery, [Doc. 15], are **GRANTED**, and it is **RECOMMENDED** that Discover's motion to compel arbitration and stay the case, [Doc. 4], be **GRANTED IN PART** and **DENIED IN PART**, finding Clark's claims in this case are arbitrable pursuant to a valid arbitration agreement, but that this

---

[16] In its motion, Discover requests that the Court stay these proceedings pending the outcome of the arbitration proceeding. [Doc. 4-1 at 17-18]. However, "[w]hen all claims in a given action must be submitted to arbitration, the [C]ourt may dismiss rather than simply stay the case." Jackson v. Cintas Corp., Civil Action No. 1:03-CV-3104-JOF, 2004 WL 5545444, at *10 (N.D. Ga. Sept. 29, 2004) (citations omitted), aff'd, 425 F.3d 1313 (11th Cir. 2005) (per curiam); see also Lichtman v. Bar Educ., Inc., Case No. 8:21-cv-1370-VMC-AEP, 2021 WL 4478249, at *7 (M.D. Fla. Sept. 30, 2021) (dismissing claims against defendant since the parties were compelled to arbitration); Kozma v. Hunter Scott Fin., L.L.C., No. 09-80502-CIV, 2010 WL 724498, at *2 (S.D. Fla. Feb. 25, 2010) (collecting cases) (noting that the Eleventh Circuit has "frequently affirmed where the district court compelled arbitration and dismissed the underlying case"); Athon, 2007 WL 1100477, at *6 (citation omitted) (citing Alford v. Dean Witter Reynolds, Inc., 975 F.2d 1161, 1164 (5th Cir. 1992)) ("In cases such as the one at bar, where all of the plaintiff's claims are subject to arbitration, the Court may dismiss with prejudice, rather than stay, the action.").

case should not be stayed pending the outcome in arbitration and should instead

be **DISMISSED**.

The Clerk is **DIRECTED** to terminate this reference.

**IT IS SO ORDERED**, **RECOMMENDED,** and **DIRECTED** this 1st day of

October, 2025.


*Russell G. Vineyard*
RUSSELL G. VINEYARD
UNITED STATES MAGISTRATE JUDGE